**Ellen R. KLEIN, Plaintiff,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Defendant.**

Civ. A. No. 91–2156(RCL).

United States District Court, District of Columbia.

Oct. 28, 1994.

R. Frances O'Brien, Flott, Rosner & O'Brien, Washington, DC, for plaintiff.

Stacy M. Ludwig, Asst. U.S. Atty., Washington, DC, for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the court on defendant's motion for summary judgment. Upon consideration of the filings of counsel and the relevant law, defendant's motion for summary judgment is granted in part and denied in part, in accordance with this memorandum opinion.

## I. Factual Summary

In late July or early August, 1988, plaintiff Ellen R. Klein was hired as a file clerk (GS–4) at the Department of Veterans Affairs (the "VA"). Plaintiff's immediate supervisor for the relevant period was Frances L. Willis, Chief of the Field Administration Unit. Plaintiff is a Jewish female with a vision impairment. The vision impairment was disclosed to Willis in the job interview, and it was determined that the disability would not interfere with plaintiff's job performance as a file clerk. Compl. ¶¶ 1–7.

Plaintiff alleged that on or around August 15, 1988, plaintiff approached Willis and asked her for leave during the upcoming Jewish holy days. Willis reacted with extreme hostility to plaintiff's request and quickly denied the request. A day or two later, but no later than August 22, 1988,

plaintiff again approached Willis and asked for the holy days off from work. The request was again met with an angry response. Willis told the plaintiff to submit her request in writing, but that Willis would recommend against granting the leave. On or about August 23, 1988, plaintiff put her request in writing, and Willis recommended against granting the leave. The request for leave was granted by Jack Gaegler, Willis' supervisor. Compl. ¶¶ 9–12.

Shortly after this request for leave, Willis informed plaintiff that she had been "written up" twice during the preceding week for poor work performance and that another such entry would result in termination. Willis told plaintiff that she was keeping a "book," recording plaintiff's work performance, to support plaintiff's termination. This record was established on or about August 22, 1988. Compl. ¶ 11.

Plaintiff alleged that from the time she first requested work leave for the Jewish holy days, Willis "embarked on a campaign of harassment and intimidation, including (but not limited to) petty, unfair criticism of plaintiff's work, unreasonable job demands, biased evaluations and reports of her job performance to Willis' supervisors, and refusals to allow plaintiff to assist other VA units when she had time available." Compl. ¶ 13. Plaintiff further alleged that complaints to Willis' supervisors did not resolve the situation. Upon Willis' recommendation and her supervisors' acquiescence, plaintiff was discharged from her position, effective April 20, 1989. The reason for termination, as stated in the termination letter, was failure to meet the required level of performance, poor work attitude, and deliberate resistance toward carrying out the orders of a supervisor. Def.'s Mot.Summ.J. ¶ 5.

Plaintiff filed an employment discrimination complaint against the VA on May 2, 1989, alleging discrimination on the basis of religion, age, and handicap, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Plaintiff further alleged that the termination was in retaliation for contacting an Equal Employment Opportunity ("EEO") counsellor. After a hearing, the EEO Commission ("EEOC") found no discrimination on the basis of religion, age, handicap, or retaliation. *Id.* Plaintiff then brought suit in this court alleging discrimination in employment on the basis of religion and disability.[1] Compl. ¶¶ 20–23.

Plaintiff raised two new claims in her Opposition to Defendant's Motion for Summary Judgment. First, plaintiff asserted that her termination was in retaliation for seeking advice from an EEO counsellor.[2] This claim is based on the allegation that when plaintiff went to see the EEO counsellor, the counsellor placed a call to Willis telling her why plaintiff had left work. Willis allegedly reacted with extreme hostility, both to the fact that plaintiff was away from her desk, and that she had gone to see an EEO counsellor. Plaintiff received notice of termination two days after this call. Pl.'s Opp.Mot.Summ.J. at 17–18.

Second, plaintiff asserted a claim that Willis created a hostile work environment. This claim was neither raised at the EEOC hearing, nor in the complaint. The hostile work environment allegedly resulted from the series of incidents that are discussed *supra*, in the discrimination claim. *Id.* at 18.

Defendant moved for summary judgment on the claims of discrimination, retaliation, and hostile work environment.[3]

---

1. It appears from the filings of counsel that the disability claim is no longer being pursued. Def.'s Mot.Summ.J. at 1 n. 1. It is not implicated in the current motion and the court does not address this claim.

2. This claim was raised at the EEOC hearing but was not raised in the complaint filed in this court. Although the court today grants leave to plaintiff to now add this retaliation claim to this case, as well as a hostile work environment

claim, the better practice would have been for plaintiff's counsel to have sought such leave before dispositive motions were filed and briefed.

3. As the hostile work environment claim was made in the Opposition to Defendant's Motion for Summary Judgment, defendant has asked for summary judgment against this claim in its Reply.

## II. Motion for Summary Judgment

### A. Legal Standard

Federal Rule of Civil Procedure 56(e) provides, *inter alia*, that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). The Advisory Committee notes that the "very mission of the summary judgment procedures is to pierce the pleadings and assess the proof to see whether there is a genuine need for trial." Fed.R.Civ.P. 56(e), Advisory Committee Note.[4] For purposes of evaluating a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party.

For summary judgment in a Title VII case alleging discriminatory treatment, the Supreme Court has established the basic allocation of burdens and order of presentation of proof:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden then shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a mere pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802, 804, 93 S.Ct. 1817, 1824, 1825, 36 L.Ed.2d 668 (1973)).

The Supreme Court in *McDonnell Douglas* then set out four factors that a Title VII claimant must show to establish a prima facie case of impermissible discrimination in hiring. *McDonnell Douglas*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973). These factors also have been adapted to the termination context, *Rowe v. Kidd*, 731 F.Supp. 534, 536 (D.D.C.1990); *Keller v. Association of Am. Medical Colleges*, 644 F.Supp. 459, 462 (D.D.C.1985), and to religious discrimination. *Singh v. Bowsher*, 609 F.Supp. 454 (D.D.C. 1984) (factors applied to racial and religious discrimination).

The essential elements of a prima facie case of impermissible discrimination are: (1) plaintiff is a member of a protected class; (2) she was qualified for continued employment and was satisfying the normal requirements of her job; (3) she was terminated; and (4) she was either replaced by a person not in the protected class, or such a person with comparable qualifications and work records was not terminated. *See Rowe*, 731 F.Supp. at 536; *Keller*, 644 F.Supp. at 462; *Singh*, 609 F.Supp. at 464.

The *McDonnell Douglas* burden shifting scheme was recently reaffirmed by the Supreme Court, and it is the test the court applies today. *See St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993) ("[O]ur opinion in *McDonnell Douglas Corp. v. Green* established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases.") (citation and footnote omitted).

### B. Religious Discrimination

In plaintiff's complaint, she alleges religious discrimination in violation of Title VII of the Civil Rights Act, as amended. 42 U.S.C. §§ 2000e–2(a), 2000e–16(a). Plaintiff has alleged facts sufficient to meet the first three elements of a prima facie case of discrimination. Plaintiff is a member of a pro-

---

4. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (noting that a court should not send a case to a jury "merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party").

tected class. *Gold v. Gallaudet College,* 630 F.Supp. 1176, 1184 (D.D.C.1986). She alleged facts to show that she qualified for continued employment, and that she was terminated. Compl. ¶¶ 14–15. However, the complaint lacks an allegation that the fourth criterion is met. Defendant points out, and plaintiff does not contest, that plaintiff's position was never filled after her termination. Rather, another employee in that unit, Janet Lewis, who is also Jewish, has assumed the duties of the plaintiff's job. Def.'s Mot. Summ.J. at 11. Plaintiff, alternatively, did not allege that her employer refused to fire a non-Jewish person in a similar position whose work performance was not satisfactory. *Id.* at 12. Lacking this fourth element, plaintiff's complaint does not meet the criteria for a prima facie case of employment discrimination based on religion.

Plaintiff argues that the above cases only apply to Title VII claims based on factors other than religious discrimination, and that a different standard for a prima facie case should be used in the present case. Pl.'s Opp.Mot.Summ.J. at 8–12. Plaintiff cites *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033 (10th Cir.1993), as the proper authority for the present case. In *Shapolia,* the court found that the claimant's supervisor was Mormon, and he allegedly discriminated against non-Mormons. Non–Mormons are a majority of society, and thus the protected class analysis did not apply. The court applied the reverse discrimination analysis, which is a modified *McDonnell Douglas* test and does not require the fourth element. *Shapolia,* 992 F.2d at 1038. As mentioned, Jewish people are a protected class, and thus the reason that the *Shapolia* court ventured away from the *McDonnell Douglas* test does not apply in this case.

Plaintiff presents no further argument to justify a distinction between religious and racial discrimination. In fact, the *Shapolia* court stated that where the religious discrimination involves termination rather than failure to accommodate, the case "more closely approximates those straight-forward disparate treatment cases in which the plaintiff claims that she was terminated because of her sex or race." *Shapolia,* 992 F.2d at 1037.

Thus, on the claim for discriminatory termination, plaintiff has failed to meet her burden under *McDonnell Douglas* and its progeny, and summary judgment is granted for defendant on that count.

### C. Retaliation

Plaintiff raises a claim of retaliation in violation of Title VII of the Civil Rights Act, as amended, in her opposition to the motion for summary judgment. Pl.'s Opp. Mot.Summ.J. at 13–18. Defendant contends first that the retaliation claim should be summarily dismissed because it was not raised in the complaint. Def.'s Mot.Summ.J. at 15. Plaintiff responds that the claim was raised at the EEOC hearing, and that the defendant has not been prejudiced by her failure to specifically raise the claim in her complaint. Pl.'s Opp.Mot.Summ.J. at 7. Defendant does not cite any caselaw to support its position and the court grants the plaintiff leave to amend her complaint to add the retaliation claim within 10 days from the date of this memorandum and Order. Fed.R.Civ.P. 15(a).

Should plaintiff add the retaliation claim, the court then denies defendant's motion for summary judgment. The burden shifting scheme set forth by the Court in *McDonnell Douglas* applies in a Title VII retaliation claim. *McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C.Cir.1984). In order to show a prima facie case of retaliation, a plaintiff must establish by a preponderance of the evidence that (1) she engaged in protected behavior; (2) she was subject to an adverse action by her employer; and (3) there is a causal link between the adverse action and the protected activity. *Berger v. Iron Workers Reinforced Rodmen Local 201,* 843 F.2d 1395, 1423 (D.C.Cir.1988); *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985); *McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C.Cir.1984); *Dhuria v. Trustees of Univ. of Dist. of Columbia,* 827 F.Supp. 818, 828 (D.D.C.1993). Defendant concedes that plaintiff can establish the first two elements. Def.'s Mot.Summ.J. at 15. Defendant asserts, however, that the termination was not linked in any way to the consultation of an EEO counsellor and subsequent EEOC com-

plaint, and summary judgment should be granted. *Id.* at 17–20.

■ The court finds that plaintiff has made out a prima facie case for retaliation. The third criterion, causal link, can be inferred when the adverse action closely follows the protected activity. *Chen v. GAO,* 821 F.2d 732, 739 (D.C.Cir.1987). Plaintiff received notice of termination two days after her visit to the EEO counsellor that triggered the angry response from plaintiff's supervisor. Def.'s Mot.Summ.J. at 16.

■ Defendant is allowed to demonstrate a legitimate, nondiscriminatory reason for the action taken. *See McDonnell Douglas,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973). Defendant asserts that the termination was not in retaliation for seeking the advice of an EEO counsellor, but for poor work performance. Defendant has ample evidence to carry its burden on this point, including Willis' notes recording plaintiff's poor performance and testimony from supervisors that Willis discussed the termination with them before the plaintiff saw the EEO counsellor. Further, Willis has stated that she drafted a termination letter before plaintiff saw the EEO counsellor. Def.'s Mot. Summ.J. at 20. Once the defendant has met its burden, plaintiff is given an opportunity to show that the stated reason is merely a pretext for retaliation. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Paul v. Federal Nat'l Mtg. Ass'n,* 697 F.Supp. 547, 553 (D.D.C.1988). Plaintiff has alleged that several of the defendant's explanations for termination are pretextual. Plaintiff alleged that the "book" that supposedly recorded plaintiff's poor work performance was established shortly after Willis' hostile reaction to plaintiff's leave request, and thus the motive for establishing the book is in question. Pl.'s Opp.Mot.Summ.J. at 3. Indeed, it is alleged that Willis indicated to the plaintiff that the establishment of the book was to support a decision to fire her. Compl. ¶ 11. This exchange allegedly came less than a month after plaintiff's hiring, and very shortly after the work leave request.

Also, Willis is alleged to have confiscated and destroyed a book kept by plaintiff which may have recorded evidence that would have helped plaintiff to rebut Willis' charges of poor performance. Pl.'s Opp.Mot.Summ.J. at 6. Although the defendant asserts that the book would not have helped plaintiff in her case, the court cannot make that determination. Def.'s Reply at 13. Further, plaintiff has pointed to significant evidence that she was performing her job in a satisfactory manner, including compliments from Willis' supervisors, offers to help out in other sections, and Willis' denial of plaintiff's transfer out of her supervision. Pl.'s Opp. Mot.Summ.J. at 4–5.

■ In addition to showing that the defendant's reason for termination was pretextual, under the shifting burden scheme of *McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817 (1973), and *Burdine,* 450 U.S. 248, 101 S.Ct. 1089 (1981), plaintiff must also carry the burden of persuasion that she has been the victim of retaliatory termination. *See Dhuria v. Trustees of Univ. of Dist. of Columbia,* 827 F.Supp. 818, 827 (D.D.C.1993) ("In other words, the burden of persuasion remains at all times on the plaintiff."). It is agreed that plaintiff was notified of her termination two days after her visit to an EEO counsellor. Def.'s Mot.Summ.J. at 16. Plaintiff has shown that Willis knew of that visit. Pl.'s Opp.Mot.Summ.J. at 17. Plaintiff also has come forward with testimony from Rhona Flehinger, the EEO counsellor plaintiff visited, describing the hostile reaction of Willis when told that the plaintiff was at Flehinger's office. *Id.* Willis was allegedly hostile to both the fact that plaintiff was away from her desk, and to plaintiff's visit to an EEO counselor. This reaction, in Flehinger's opinion, was a breach of EEO principles. *Id.* The court finds this to be credible evidence sufficient to support the plaintiff's burden on this point.

Defendant argues that the termination letter was drafted before plaintiff's visit to the EEO counselor. Willis also testified that she did not react in an angry or hostile manner at all when she received Flehinger's call. *Id.* at 17–18. Thus, both sides have conflicting testimony to offer on a material issue. The court cannot say one is more credible than the other.

The court finds that plaintiff has demonstrated a genuine issue as to whether defendant's reason for termination was pretextual. There is also a genuine issue as to when the letter of termination was drafted, and why the plaintiff was terminated.

### D. Hostile Work Environment

■ Plaintiff, in her opposition to the motion for summary judgment, alleges for the first time that Willis' harassment resulted in a hostile work environment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–16(a). *Id.* at 18. Defendant asserts that plaintiff cannot raise this claim now because it was not raised at the administrative level, and thus plaintiff has not exhausted her administrative remedies. Def.'s Reply at 18. The court rejects the defendant's argument and grants plaintiff leave to amend her complaint to allege this cause of action within 10 days from the date of this Memorandum and Order. Fed.R.Civ.P. 15(a).

■ The plaintiff is not raising a different basis for discrimination than that raised at the EEOC level. *See Saad v. Burns Int'l Security Serv., Inc.*, 456 F.Supp. 33, 36 (D.D.C.1978) ("[P]laintiff's claims of discrimination under Title VII based on race or color, religion and sex, which constitute separate and distinct categories from national origin, and which were not raised during the administrative process, must be denied."). The hostile work environment is alleged to have resulted from the same religious discrimination that was alleged in the EEOC hearing. When a plaintiff alleges new claims from the same basis for discrimination, they can be litigated, notwithstanding the failure to raise them at the administrative level, if they could "reasonably be expected to grow out of the charge of discrimination." *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970)); *see also Miller v. Smith*, 584 F.Supp. 149, 154 (D.D.C.1984) (applying the same test); *Lamont v. Forman Bros.*, 410 F.Supp. 912, 917 (D.D.C.1976) (same test).

Plaintiff alleged that Willis conducted a "campaign of harassment and intimidation." Compl. ¶ 13. This campaign of discrimination was properly brought before the EEOC. It can reasonably be expected that a charge of a hostile work environment could grow out of these charges of discrimination. The cases defendant cites in support of its argument all refer to different bases for discrimination that were not raised at the administrative level, not to different claims from the same category of discrimination. Def.'s Reply at 19 (citing, e.g., *Miller v. Smith*, 584 F.Supp. 149 (D.D.C.1984)). Thus, plaintiff is granted leave to amend her complaint to add this charge.[5] Defendant has no other challenge to this claim and its motion for summary judgment on this issue is denied.

### III. Conclusion

Defendant's motion for summary judgment on the claim of discriminatory termination is granted. Plaintiff is granted leave to amend her complaint to add the claims of retaliation and hostile work environment within 10 days from the date of this Memorandum and Order. Defendant's motion for summary judgment on these two claims is denied.

---

**5.** Although the court grants leave to plaintiff to now add this claim of hostile work environment, it is unclear what relief is available for a successful action on this claim. It appears that injunctive relief from a successful retaliatory termination claim would subsume any relief for a hostile work environment claim, and would make the latter claim moot. The court today merely notes the problem, and awaits further briefing in this case.