Lola **HATCHER–CAPERS**, Plaintiff,

v.

George W. **HALEY**, Chairman, Postal Rate Commission, Defendant.

Civ.A. No. 90–1162 (CRR).

United States District Court, District of Columbia.

March 20, 1992.

Inga A. Watkins of Brown, Brown & Watkins, Alexandria, Va., for plaintiff.

Jay B. Stephens, U.S. Atty., John D. Bates and James Layton, Asst. U.S. Atty., District of Columbia, for defendant.

## OPINION

CHARLES R. RICHEY, District Judge.

In the above-captioned case, the plaintiff, an African–American female who is an attorney-advisor for the Postal Rate Commission ("PRC", "Commission"), contends that the PRC has failed to promote her because of race and gender discrimination. She brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16.

Trial was held in this case on January 13 and 14, 1992. The Court has carefully considered the submissions of the parties, the testimony of witnesses, the exhibits, the arguments of counsel, the applicable law, and the entire record herein, and concludes that the plaintiff has successfully proved that she was the victim of unlawful discrimination in the form of disparate treatment on the basis of her race and gender.

This Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

### I. *Background*

The plaintiff works as an attorney-advisor for the Office of General Counsel ("OGC") of the PRC, which is part of the Executive Branch. The PRC is a small agency with about 60 employees. The OGC currently has five attorneys. Hatcher–Capers decl. at 9. The plaintiff began her career with the OGC in June 1980 at the pay level of EAS–19 (analogous to the GS–11 level on the federal pay scale). She understood from conversations with white female attorneys in the OGC that they had been promoted to EAS–22 grade levels (analogous to the GS–12 level) after being with the Commission for one year. When the plaintiff reached her first year anniversary at the Commission, she did not receive a promotion. She asked her supervisor, David Stover, why she did not received the promotion, and in response he recommended her for a promotion, which she then received.

At the plaintiff's second year anniversary, she expected a promotion to the EAS–25 (analogous to the GS–13 level), based on her discussions with the white female attorneys in the OGC. When the plaintiff did not receive the promotion, she wrote a letter to the Chairman of the PRC and to the administrative office. Hatcher–Capers decl. at 17–19. In response, she received a memorandum dated October 25, 1982 from David Harris, Chief Administrative Officer, informing her that:

The policy of the Commission has always been "to grant timely promotions to indi-

viduals *when warranted by their job performance and commensurate increases in their qualifications and job responsibilities.* (Administrative Manual, Section 205, VIII.) A supervisor is constantly assessing the work product of the individuals on his/her staff and when performance/qualifications/responsibilities match-up with a higher grade a recommendation to promote is made. A promotion is not a "right".

Pl.'s Ex. 13 (emphasis in original). The plaintiff sought informal Equal Employment Opportunity ("EEO") counseling, and as a result, she was promoted to an EAS–25 grade level. *Id.* at 19. Since then, the plaintiff has remained at the EAS–25 grade pay level. The plaintiff brings this claim based on the Commission's failure to promote her to an EAS–28 position (analogous to the GS–14 level).

Mr. David Stover, the General Counsel of the PRC and the plaintiff's supervisor, testified that there are five non-supervisory attorneys in the Office of General Counsel. Three are ranked at the EAS–28 level or above. Two, the plaintiff and Ms. Kathleen Simkins, are ranked at the EAS–25 level. Mr. Stover testified that the plaintiff specializes in post office closing cases, which she handles with minimal supervision. Her writing does not require more substantive revisions than that of the other attorneys in OGC, and has not since approximately 1985. During her entire tenure with the OGC, the plaintiff has received ratings satisfactory or better; since she has been at the EAS–25 level, she has received ratings of "good" or "very good" from her supervisor. Mr. Stover also noted that the plaintiff has demonstrated increasing independence in her work over the years. He stated that if he could freely promote without the restrictions imposed by the Administrative Office, he would promote the plaintiff to the EAS–28 level, as well as Kathleen Simkins, the other EAS–25 attorney in the office.

In approximately May, 1989, the plaintiff inadvertently saw the paycheck stub of Patricia Gallagher, another attorney-advisor in the OGC. She noted a large discrepancy between Ms. Gallagher's salary and her own, and was perplexed since Ms. Gallagher was hired by the Commission seven months after the plaintiff and appeared to have essentially the same job responsibilities. Hatcher–Capers decl. at 12. The plaintiff understood that the EAS–28 grade was the next rung on the career ladder and that the progression would occur noncompetitively. Therefore, on May 2, 1989, plaintiff went to see Cyril J. Pittack, the Personnel Officer and Assistant Administrative Officer, to discuss the possibility of promotion to the EAS–28 level. At their meeting, Mr. Pittack informed the plaintiff that the Commission passed a policy in the early 1980's which limited the number of EAS–28 positions. The plaintiff could not be promoted unless a vacancy opened up and she competed for the position. *Id.* at 13.

Mr. Pittack clarified the nature of the policy at trial. He stated that the effect of the policy enacted in 1982 was to "freeze" the number of EAS–28 positions available at the Commission. Pittack decl. at ¶ 37. Before the policy was enacted, Mr. Pittack testified that there were four EAS–28 positions available in the OGC's office. Upon the promotion of Patricia Gallagher, three of these positions were filled, leaving one vacancy, which was frozen. Mr. Pittack explained that this policy was enacted to combat "grade creep", or the tendency for there to be too many upper-level personnel in relation to other personnel on the PRC's professional staff, and to avoid funding positions for which there was not sufficient work. *Id.* at ¶¶ 35–37, 42. Mr. Pittack also testified that apart from the limitation policy enacted in 1982, there are two prerequisites for all promotions to the EAS–28 level which had been enforced irrespective of the 1982 policy: (1) promotions to EAS–28 positions were competitive; and (2) promotions to EAS–28 positions were made only if a vacancy existed. These requirements were in contrast to the promotion system for the attorneys up through the EAS–25 level, for which promotion was noncompetitive and vacancies were not required. The plaintiff here contests both the decision to limit the number of vacancies, and the requirements

that promotion be given only competitively and when vacancies are available. As to the latter two requirements, the plaintiff contends that even if they existed before 1982, they were neither publicized to employees nor of any practical significance until that time.

On May 16, 1989, in response to the information Mr. Pittack provided, the plaintiff contacted the Commission's Equal Employment Opportunity counselor. The plaintiff complained that she had not been promoted to the next-higher grade due to the 1982 change in the Commission's staffing policy. The plaintiff argued that the policy had a disparate effect on black and female employees, and that she had become aware of this policy only within the preceding two weeks. Efforts to resolve the plaintiff's complaint were unsuccessful, and on June 7, 1989, the counselor issued the plaintiff a Notice of Right to File Discrimination Complaint.

On July 15, 1989, the plaintiff filed her agency complaint based on Title VII and the Equal Pay Act. On August 18, 1989, the PRC dismissed the Equal Pay Act and the Title VII claims. Pl.'s Ex. 2. The plaintiff timely appealed the PRC's decision to the Equal Employment Opportunity Commission ("EEOC"), which affirmed the PRC. By Decision dated November 27, 1989, the EEOC held that the plaintiff failed to state a claim under the Equal Pay Act and that the Title VII claim was untimely. The plaintiff filed a petition for the EEOC to reopen its decision, which it refused. The plaintiff then filed suit in this Court.

On May 1, 1991, this Court dismissed the plaintiff's Equal Pay Act and tort claims and denied defendant's request for summary judgment on the Title VII claim. On September 30, 1991, 773 F.Supp. 486, the Court denied the defendant's second motion for summary judgment on the Title VII claim, finding that there remained questions of material fact regarding the timeliness of plaintiff's claim. On January 9, 1992, the Court granted defendant's motion

to strike jury demand and for compensatory damages.[1] Trial began on January 13, 1992.

## II. *Analysis*

The plaintiff alleges that the defendant violated Title VII both because she received disparate treatment and because the alleged policy upon which defendant relied in denying her promotion has a discriminatory impact on women and African–Americans. The defendant denies that any illegal discrimination occurred, and further contends that the plaintiff's claim should be dismissed in any event as untimely.

### A. *Timeliness of the Claim*

 Under EEOC regulations, a federal employee must submit a discrimination complaint to the agency counselor within thirty days of the alleged discriminatory event or action, *or* within thirty days of the date that she knew or reasonably should have known of the discriminatory event or action:

An ... agency may accept the [EEOC] complaint for processing in accordance with this subpart only if:

(i) The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him/her to believe he/she had been discriminated against within 30 calendar days of the date of the alleged discriminatory event, the effective date of an alleged discriminatory personnel action, or the date that the aggrieved person knew or reasonably should have known of the discriminatory event or personnel action ...

29 C.F.R. § 1613.214(a)(1). The plain language of the regulation provides that the thirty-day deadline for filing an administrative complaint depends on when the plaintiff knew or should have known of the discriminatory action or event. Moreover, courts have held that the timely filing of an EEOC charge is not a jurisdictional requirement to sue, but rather is "at least as yielding" as a statute of limitations that is

---

**1.** The Court ruled at the pretrial conference that the Civil Rights Act of 1991 does not apply

retroactively to this case. *See* Order filed January 9, 1992.

subject to equitable tolling. *Bayer v. Dep't of the Treasury*, 956 F.2d 330 (D.C.Cir.1992). *See also Jarrell v. United States Postal Serv.*, 753 F.2d 1088, 1091 (D.C.Cir.1985); *Saltz v. Lehman*, 672 F.2d 207, 208 (D.C.Cir.1982); *Mondy v. Secretary of Army*, 845 F.2d 1051, 1055 & n. 6 (D.C.Cir.1988). The plaintiff has "the burden of pleading and proving in the district court any equitable reasons for [her] failure to meet the thirty-day requirement." *Saltz*, 672 F.2d at 209. While the equitable power to toll the time limit should be carefully circumscribed, instances in which courts may allow tolling include cases where a claimant has received inadequate notice or where affirmative misconduct on the part of the defendant lulled the plaintiff into inaction. *Mondy*, 845 F.2d at 1057.

■ The defendant argues that the plaintiff's claim is untimely because she did not initiate Title VII proceedings until more than seven years after the adoption of the promotion policy she contends is discriminatory, and more than four years after she knew or should have known that a policy had been implemented that limited her promotion opportunities. The defendant further argues that the plaintiff has shown no grounds for equitable tolling of the statute of limitations, and has not alleged facts showing a continuing violation of Title VII.

The Court finds that the plaintiff has met her burden of showing grounds for equitable tolling and a continuing violation of Title VII. First, the plaintiff has shown that the "policy" upon which the defendant relies to justify its failure to promote her was never publicized. The defendant concedes that there was no documentation of the enactment of the 1982 policy limiting the number of EAS–28 vacancies. There was also no evidence that the fourth EAS–28 position in the OGC, "frozen" in 1982, was ever formally abolished.

Moreover, neither circulars distributed to employees, nor the administrative manual set forth the differences in the promotion scheme to the EAS–28 level and above (supposedly competitive and requiring a vacancy) as compared with the promotion scheme to the EAS–25 level and below (noncompetitive and not requiring a vacancy). While a circular entitled "Merit Staffing Plan" indicated that promotions without competition were available until an employee reached the "journeyman" level, there was no indication that the journeyman level for attorneys was the EAS–25 level. Pittack decl. at ¶ 22; Def.'s Ex. 3 at I–19. The confusion among employees over the issue of a journeyman level for attorneys is demonstrated not only by the lack of documentation of the policy, but by the confusion of witnesses who testified at trial about the significance of the term. David Ruderman thought that the journeyman level was lowered in 1982 from EAS–28 to EAS–25 (or from GS–14 to GS–13). Ruderman decl. at 3. Kathleen Simkins thought it was similar to the designation "senior". Simkins decl. at 8.

Plaintiff testified that she was unaware of Patricia Gallagher's promotion to the EAS–28 level until May, 1989 when she inadvertently saw her pay stub, because a vacancy announcement for the position was not posted and plaintiff had not discussed the promotion with Ms. Gallagher or other personnel. The Court finds the plaintiff credible on these points. While the plaintiff admits that she may have speculated about receiving her EAS–28 promotion before 1989, she believed that she would receive it in due course until she was told about the limitation policy.[2] Her impression, based on the memorandum she had received from the Administrative Officer on October 25, 1982, was that she would be promoted when her job responsibilities matched the higher position. *See* Pl.'s Ex. 13. Since the plaintiff was not sure who held the higher positions, she did not know exactly when she would meet the requirements or when she should expect the promotion. For the earlier promotions, she

---

**2.** Although Mr. Pittack, the Personnel Officer, contends that he had a conversation with the plaintiff about her eligibility for promotion to EAS–28 in 1985, *see* Pittack decl. at ¶ 56, the Court is convinced by the plaintiff's assertion that such a discussion did not occur, at least as Mr. Pittack recalls it.

used the experiences of other female attorneys as a guideline. Her contention that she did not have that information for the EAS–28 position is particularly persuasive because neither of the women who previously advised the plaintiff on the time intervals for promotions had been promoted to the EAS–28 level.

The defendant argues that others at the PRC must have told the plaintiff about the policy before 1989, and that given her inquiries when she did not receive the earlier promotions, she must have inquired before 1989 as to why she was not being promoted again. To support these arguments, the defendant offers the testimony of one disgruntled former employee, John Sawyer, who stated that he believed that he discussed Patricia Gallagher's promotion to EAS–28 with the plaintiff. However, the witness did not remember the alleged discussion specifically, and he admitted that he could not state with a moral certainty that he had in fact discussed that promotion with the plaintiff. The Court is not persuaded by this allegation.

Based on a preponderance of the credible evidence, the Court finds that the plaintiff received no notice of the policy which would have alerted her to the possibility of its discriminatory nature until her conversation with Mr. Pittack in 1989. Therefore, the Court finds that tolling of the statute of limitations is appropriate. The plaintiff had no reason to know about the policy of which she complains until she was told about it when she made inquiries of her own initiative.

■■■ In addition to finding that the plaintiff has shown grounds for equitable tolling here, the Court finds that the plaintiff has demonstrated that the policy at issue here is a *continuing violation* of Title VII. To establish a continuing violation, the plaintiff must show either a series of related discriminatory acts, of which one or more fall within the limitations period, or the maintenance of a discriminatory system both before and during the limitations period. *Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C.Cir.1982). Rather than alleging one instance of dis-

crimination, the plaintiff attacks the decision not to promote her as the result of a "single, continuous policy" which has been ongoing at the agency since its adoption in 1982. Therefore, it would be inappropriate to hold that the plaintiff is outside the statute of limitations, since the discrimination of which she complains results from a system which continues to this date. *Compare Stoller v. Marsh*, 682 F.2d 971, 975 (D.C.Cir.1982) (no continuing violation shown where allegations "do not adequately link four separate episodes of alleged discrimination into a single, continuous policy").

### B. *Disparate Treatment*

■■■ To make out a *prima facie* Title VII disparate treatment claim in this case, the Plaintiff must show that: (1) she belongs to a protected group; (2) she was qualified for the EAS–28 position; (3) was not promoted; and (4) the position remained open. *See Cooper v. Federal Reserve Bank*, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the plaintiff demonstrates a *prima facie* case, the burden of production falls upon the defendant to establish a legitimate, non-discriminatory reason for the employment action taken. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). The plaintiff then has the opportunity to show, by a preponderance of the evidence, that the reasons set forth by the defendant for the employment action were merely a pretext for discrimination. *Id.* at 253, 255, 101 S.Ct. at 1093–94, 1094–95. The plaintiff has the burden of persuasion at all times of showing that the defendant intentionally discriminated against her. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714–16, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *McKenna v. Weinberger*, 729 F.2d 783, 788 (D.C.Cir. 1984); *Rowe v. Kidd*, 731 F.Supp. 534, 536 (D.D.C.1990).

■ The plaintiff has successfully established a *prima facie* showing of discrimination. First, she is the member of a protected group because of her race and gender. Second, she has demonstrated that she was qualified for the EAS–28 position. The plaintiff's supervisor, David Stover, testified that if not for the administrative policy limiting promotions, he would recommend her for a promotion to the EAS–28 position. He also acknowledged that the plaintiff does work comparable to that of those who hold EAS–28 positions, and had been doing so since about 1985. Third, it is undisputed that the plaintiff was not promoted. Finally, there currently exists at least one vacancy at the OGC at the EAS–28 level, namely, the fourth EAS–28 position that was "frozen" in 1982.[3] Therefore the Court concludes that the plaintiff has established a *prima facie* case of discrimination.

■ The defendant asserts that the failure to promote the plaintiff was not discriminatory, but was based on legitimate administrative concerns reflected in the policy which limited the availability of promotions to the EAS–28 level. In particular, the defendant defends the policy by citing the importance of controlling personnel costs. Further, it contends that "if all employees were freely allowed to reach the higher level positions, eventually the system would pay everyone at the same rate." Pittack decl. at ¶ 35. Thereafter, defendant argues, instead of deciding on the merits of each pay increase, "the Commission would be placed in a position of simply consenting to each such request." *Id.*

The plaintiff has successfully shown that these reasons for denying her a promotion

are a mere pretext for discrimination. She has demonstrated that she performs duties comparable to the duties performed by those who hold the EAS–28 positions, and has been doing so, according to her supervisor, since approximately 1985. While the Court understands that budgetary concerns are a legitimate priority, the Commission in fact had more funds appropriated to it than it used. On average, Mr. Pittack testified that the Commission has a budgetary surplus of approximately $600,000 per year. Mr. Pittack also testified that the Commission is opposed to budgeting for a greater workload that exists. However, the preponderance of the evidence shows that the plaintiff was performing work that was analogous to the work of the EAS–28 attorneys. Thus there seems to have been enough work for another EAS–28 attorney to perform. While the Court commends the PRC for its thrift and respect for the federal fisc, it does not believe that this concern adequately explains the denial of promotions and pay increases to those employees who are performing the work for the higher job description.

The plaintiff has shown that the defendant's argument that the lack of a vacancy at the EAS–28 level constitutes a legitimate, non-pretextual reason for its failure to promote the plaintiff lacks merit. While the defendant offered testimony that all attorneys who reached the EAS–28 (or GS–14) level after 1977 were promoted pursuant to a vacancy, it appears that the Administrative Office was always able to locate a vacancy until 1982. The attorneys who were promoted to the EAS–28 level did not apply or compete for posted vacancies. Rather, they were recommended by their supervisor, and the personnel office would

---

**3.** The Court acknowledges that the PRC has not been seeking to hire anyone as an EAS–28 attorney in the General Counsel's Office, notwithstanding the vacancy that Cyril Pittack admitted existed but had not been formally abolished. *Compare Cooper,* 467 U.S. at 875, 104 S.Ct. at 2799. However, this fact does not defeat the plaintiff's *prima facie* showing in this instance, when she contends that the employer's failure to seek to promote anyone to an EAS–28 position was in and of itself discriminatory, because the two people eligible for the promotions were both female, and one (the plaintiff) was black.

*See, e.g., Rich v. Martin Marietta Corp.,* 522 F.2d 333, 346–47 (10th Cir.1975) (criticizing "highly literal" construction of the *McDonnell Douglas prima facie* formulation). The plaintiff has offered evidence adequate to "create an inference that [s]he was denied an employment opportunity on the basis of a discriminatory criterion enumerated in Title VII." *Cooper,* 467 U.S. at 874, 104 S.Ct. at 2799. Moreover, the Court is not convinced that vacancies were necessary in fact for the promotion of the white males to the EAS–28 level.

find a "vacancy" that they could fill. There was no evidence that a qualified white male attorney was denied a promotion to an EAS–28 level because a vacancy was unavailable.[4] The literature available to employees does not state that a vacancy is required for a promotion to the EAS–28 level, nor does it make clear that the EAS–28 level is not part of the "career ladder" for OGC attorneys, as the defendants now contend. *See* Pl.'s Ex. 6. Therefore the Court finds that the vacancy requirement is pretextual in nature.

The plaintiff also points out that she and the other EAS–25 attorney in the OGC, Ms. Kathleen Simkins, were hired as part of an affirmative action program implemented in the late 1970's. She points to several experiences which provide evidence of hostility to her as an employee hired pursuant to this program. First, she notes that the average time in grade at the EAS–25 level for male attorneys in the OGC and the Office of the Consumer Advocate was one year, two and one-half months, while for black attorneys it was eight years, ten months, and for female attorneys it was eight years, ten months in the OGC and ten years six months in the OCA. Responses to Pl.'s Second Set of Interrogatories 61–64. She also notes that each time she was promoted, it was only after she made inquiries and, on one occasion, filed an EEO complaint, which suggests a reluctance on the part of the agency to promote her on schedule, as it did for the other attorneys. The plaintiff also points to the timing of the institution of the policy as suspect. It was timed very shortly after the promotion of Patricia Gallagher. A logical inference from this sequence of events is that the policy was instituted to discourage the advancement of other women and minorities.

The defendant contends that because there were white males who were not promoted to the EAS–28 position, the policy was not discriminatory. This argument is not convincing because there was no showing by the defendant that these people were ever qualified to be EAS–28 attor-

neys, whereas by contrast the plaintiff's supervisor, the General Counsel of the PRC, testified that the plaintiff and her white female colleague, both currently ranked at the EAS–25 level, are both qualified for the EAS–28 level.

While the "freeze" in hiring or promoting people to the EAS–28 level was supposedly adopted throughout the PRC, the defendant's witness Cyril Pittack admitted that after the freeze two white males were hired in the EAS–28 position in the Technical Assistance and Planning Unit, and one white female in the Office of the Consumer Advocate was promoted to EAS–28, while the plaintiff, a black female has not been promoted. This testimony suggests that the "freeze" is being selectively enforced, which renders the underlying policy more suspect.

The plaintiff also offers evidence of hostility directed toward her that she believes stems from race and gender discrimination and provides further proof that the difficulty she has experienced in being promoted is rooted in discrimination. For example, she describes an incident in which another attorney in the OGC (one who had behavior problems) spit in her face. They had an argument in the administrative office. The following day the plaintiff received notice of disciplinary proceedings being instituted against her, pursuant to the Administrative Officer's (David Harris) recommendation. The Administrative Officer accused her of conduct unbecoming an attorney and recommended that she be suspended from work. Hatcher–Capers decl. at 19–21; Pl.'s Ex. 15. When the plaintiff contested the charges, she was absolved of all accusations of misconduct. Hatcher–Capers decl. at 20. No disciplinary sanctions were instituted against the other (white male) attorney involved in the incident, although he had a history of behavioral problems and was discharged three years later for other behavioral infractions. *Id.* at 21.

On another occasion, the plaintiff approached the Administrative Officer (Charles Clapp, Mr. Harris' successor) to

---

**4.** The defendant has not shown that John Sawyer, a white male who expressed some interest

in a promotion to the EAS–28 level, was qualified for a promotion.

discuss the concerns of herself and other black employees regarding a particular document they viewed as offensive. She stated that her impression of the meeting was that the Administrative Officer was not responsive to her concerns because of hostility on the part of some of his superiors to blacks and women. She has also described an "atmosphere of resentment" to the presence of black and female attorneys, evidenced in derogatory and inappropriate remarks concerning black and female employees. Hatcher–Capers decl. at 24, 21–22.

While none of these factors, standing alone, is decisive, the combination is sufficient to convince this Court that the reason proffered by the defendant for its failure to promote the plaintiff, namely, a policy limiting the availability of promotions which was never publicized and not adopted out of financial necessity or budgetary constraints, is a mere pretext for discrimination. The policy effectively prevented the plaintiff, who was hired pursuant to affirmative action recruiting and forced to struggle to receive her prior promotions, from advancing in the Commission as her white, predominantly male predecessors had. This Court cannot and shall not condone this artificial and unjustifiable barrier to the advancement of the plaintiff, a qualified woman of color, at the PRC. Therefore the Court shall uphold the plaintiff's disparate treatment claim.

### C. Disparate Impact Claim

■ The plaintiff also attacks the limitation policy as violative of Title VII because it has a disparate adverse impact on protected groups. *See, e.g., Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). In order to establish a *prima facie* case of disparate impact, the plaintiff must provide evidence that a facially neutral policy or test has a significant discriminatory impact on black or female employees seeking to advance at the PRC. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975).

■ The plaintiff has compiled a number of statistics to support her claim. For example, she points out that while the Commission's white male attorneys are all graded at EAS–28 or above, the one black attorney is excluded from this level, even though EAS–28 is not a supervisory position. Mr. Pittack testified that of the twenty-six professionals at the Commission, ten are at the EAS–28 level, and none of these EAS–28 employees are black. She also points to evidence of the relatively low stature of black employees in the PRC generally. *See* Def.'s Responses to Pl.'s second and third sets of interrogatories.

Despite these and similar statistics, the plaintiff cannot establish a *prima facie* case of disparate impact because she does not demonstrate that the data that she offers is statistically significant. The Court of Appeals has stated that:

> Statistical calculations performed on data in discrimination cases are not probative of anything without support from an underlying statistical theory ... the numerical disparity can sometimes be explained by reasons other than discrimination. For instance, the sample itself may not be representative of the population at large, or sufficiently random, or, as the district court in this case observed, the sample may be so small that a slight change in the data would present an entirely different result ... In addition, disparities may be explainable by other factors, such as uncomprehensive statistical treatment, varying levels of qualifications among applicants, errors in definition or groups, inappropriate sampling methods, errors in measurement, or even clerical and computational errors.

*Frazier v. Consolidated Rail Corp.,* 851 F.2d 1447, 1452 (D.C.Cir.1988). Moreover, as the size of a statistical sample decreases, the probability that a discrepancy is due to chance, rather than discrimination, increases. *Id.* at 1451, citing *Segar v. Smith,* 738 F.2d 1249, 1282–83 (D.C.Cir. 1984), *cert. denied,* 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985). For these reasons, the Court of Appeals has held that statistics "must be made meaningful to the

finder of fact" if a plaintiff is to establish a *prima facie* case. *Frazier* at 1453.

The plaintiff has failed to make her statistics sufficiently meaningful to the Court to warrant a finding in her favor on the issue of the disparate impact theory. Rather, she has presented to the Court some numerical compilations for the agency, which she claims evidence discrimination. However, given the relatively small size of the agency, and in particular, the small size of the OGC, the Court is not convinced these figures are significant. For example, it is true that no black female attorney has been promoted to the EAS–28 level; however, since the plaintiff is the *only* black female attorney, it is difficult for the Court to discern a pattern of discrimination from this information. Too many other reasons could account for the disparity.

Therefore, the plaintiff's disparate impact claim must fail, but, as previously stated, she has prevailed on her disparate treatment claim, and is entitled to relief.

### D. *Remedy*

In determining the nature of the relief to which the plaintiff is entitled, the Court finds that but for the discriminatory conduct on the part of the defendant, the plaintiff would have been promoted and would now hold an EAS–28 position, because the policy upon which the defendant relies to justify its action is a simply a pretext for discrimination. *See, e.g., Bibbs v. Block*, 778 F.2d 1318, 1319 (8th Cir.1985) (en banc). In light of this finding, the Court determines that the following remedies are appropriate. First, the plaintiff should be promoted to the EAS–28 grade immediately, as this is the position that she would hold but for the illegal discrimination. To the extent that a "vacancy" is not available at the EAS–28 grade, the defendant shall create one. In addition, the plaintiff is entitled to back pay in the amount of the difference in pay she would have received if she had been promoted to the EAS–28 position on July 15, 1987, including the appropriate in-grade increases. The plaintiff is also entitled to whatever increases in benefits would have accrued had she been promoted, and to an award of reasonable costs and attorneys fees.

In accordance with 42 U.S.C. § 2000e–5(g), the back pay award shall commence two years prior to the date the plaintiff filed her formal charge with the EEOC, that is, two years prior to July 15, 1989, or July 15, 1987, and continue through the date of this Opinion and Order. The Court finds that the beginning date is appropriate both because it is permissible under the statute and because according to the testimony of her supervisor, David Stover, the plaintiff has been performing work on a par with the EAS–28 attorneys since approximately 1985. By 1987, then, she was certainly entitled to a promotion to the EAS–28 level, and would have received it were it not for the discrimination.

The parties shall confer and negotiate the correct discrete amounts to be awarded to the plaintiff as back pay and benefits, and shall advise the Court thereof within fifteen (15) days of the date of this Opinion and accompanying Order. Plaintiff's counsel shall also submit her application for attorneys' fees and costs within fifteen (15) days of the date of this Opinion and accompanying Order.

### III. *Conclusion*

For all of the foregoing reasons, the Court shall enter judgment for the plaintiff in this action. While the plaintiff has failed to make out a disparate impact claim, she has proved that the Postal Rate Commission's failure to promote her constituted disparate treatment on the basis of her race and gender, in violation of Title VII. Accordingly, the Court shall order the plaintiff to be promoted to the EAS–28 level, with backpay, costs, and attorneys' fees.